1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. BELL *et al.*, | CASE NO. 11-CV-2514-MMA(RBB) |
| Plaintiffs, | **ORDER:** |
| | **GRANTING DEFENDANT AMERICAN EAGLE REAL ESTATE INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; and** |
| vs. | |
| | [Doc. No. 18] |
| FEDERAL HOME LOAN MORTGAGE CORPORATION *et al.*, | **GRANTING DEFENDANT LITTON LOAN SERVICING LP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| Defendants. | [Doc. No. 19] |

Pending before the Court are Defendants Litton Loan Servicing LP's and American Eagle Real Estate, Inc.'s (respectively, "Litton" and "American Eagle," and collectively "Defendants") motions to dismiss Plaintiffs' First Amended Complaint. For the reasons stated below, the Court finds that Plaintiffs' fraud-based claims against Defendants fail to satisfy Federal Rule of Civil Procedure 9(b)'s particularity requirement. The Court further finds that Plaintiffs' fraudulent concealment and negligent misrepresentation claims fail pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs do not allege Litton owed them a duty of disclosure or care. Accordingly, the Court **GRANTS** the pending motions to dismiss.

/ / /

11CV2514

# I. BACKGROUND

On January 24, 2012, Plaintiffs Michael Bell and Zerla Bell filed a First Amended Complaint ("FAC"), alleging Defendants Federal Home Loan Mortgage Corporation ("Freddie Mac"), Litton, and American Eagle fraudulently concealed known defects during the sale of real property located in National City, California (the "Property").  Plaintiffs further allege that Freddie Mac breached the contract of sale.

Freddie Mac originally purchased the Property at a non-judicial foreclosure sale for $255,000.  [FAC at ¶ 11; Ex. A to FAC, Doc. No. 17-1 at 2.][1]  The trustee's deed of sale was recorded on July 24, 2009, and identifies Litton as entity to whom the deed and tax statements were to be sent.  [Doc. No. 17-1 at 1.]

On July 30, 2009, the San Diego County Department of Planning and Land Use ("DPLU") issued an administrative warning[2] to Freddie Mac for unauthorized structural additions that were built without proper permits (hereafter, "unpermitted additions").  [FAC at ¶ 13; Ex. C to FAC, Doc. No. 17-3.]  The DPLU mailed the citation to Freddie Mac, care of Litton, and instructed Freddie Mac to "submit plans to code enforcement addressing all unpermitted construction to obtain required building permits [and] inspection, if possible, or remove or restore to original condition.  Remove 363 square feet of unpermitted additions on the west side of dwelling" no later than August 30, 2009.  [Doc. No. 17-3.]

On September 9, 2009, the DPLU issued an administrative citation, including a $100 fine, to Freddie Mac, again mailed care of Litton, reiterating that Freddie Mac must obtain permits for the unpermitted additions or remove them by October 9, 2009.  [FAC at ¶ 14; Ex. D to FAC, Doc. No. 17-4.]  Litton, acting as Freddie Mac's "agent on the property," instructed Freddie Mac's realtor, American Eagle, to pay the $100 fine.  [FAC at ¶ 15.]  In late September 2009, American

---

[1]  All citations to documents filed on the Court's docket refer to the documents' renumbered CM/ECF pages, not to the documents' native pagination.

[2]  Although the parties refer to this warning as a "citation," the document itself indicates that it is a warning and does not impose a fine.  [*See* Ex. C to FAC, Doc. No. 17-3.]  For the sake of consistency, the Court will also refer to this warning as a citation.

1   Eagle issued a check for $100 to the DPLU.³  [*Id.*; Ex. E to FAC, Doc. No. 17-5.]  Litton allegedly

2   instructed American Eagle to pay the fine in order to conceal the existence of the citations and

3   unpermitted additions.  [*Id.* ¶ 21.]

4         On September 11, 2009, Plaintiffs purchased the Property from Freddie Mac for

5   $173,481.38.  [FAC at ¶¶ 12, 18.]  On October 2, 2009, Plaintiffs received a third citation from the

6   DPLU.  [*Id.* ¶ 16.]  According to Plaintiffs, this was the first time they learned that the additions

7   were constructed without the proper permits.  [*Id.*]  Because the additions constitute a significant

8   portion of the kitchen and dining areas, Plaintiffs estimate it will cost approximately $135,000 to

9   demolish and rebuild the areas with the required permits.  [*Id.* ¶¶ 17, 19.]

10        Plaintiffs allege Defendants fraudulently and negligently concealed the existence of the

11   citations and unpermitted additions in order to induce Plaintiffs to purchase the Property.  [*Id.*

12   ¶ 20.]  They further allege they would not have purchased the Property if they had known about

13   the unpermitted additions.  [*Id.* ¶¶ 39, 49, 60.]

14        On August 1, 2011, Plaintiffs filed suit against Defendants in state court, alleging various

15   claims based in fraud and contract.  On October 28, 2011, Freddie Mac removed the action to this

16   Court.  [Doc. No. 1.]  In late 2011, Litton and American Eagle moved to dismiss the complaint

17   pursuant to Federal Rule of Civil Procedure 12(b)(6).

18        On January 10, 2012, the Court convened a hearing, entertained arguments, and dismissed

19   Plaintiffs' claims against Litton and American Eagle.  [Doc. Nos. 13-16.]  Specifically, the Court

20   dismissed with prejudice Plaintiffs' claims for breach of contract and for breach of the implied

21   covenant of good faith and fair dealing.  The Court also dismissed Plaintiffs' four fraud claims

22   without prejudice and with leave to amend.

23        On January 24, 2012, Plaintiffs filed the FAC re-alleging their claims against Litton and

24   American Eagle for (1) Fraudulent Inducement (to enter contract); (2) Fraud – Intentional

25   Misrepresentation; (3) Fraudulent Concealment; and (4) Fraud – Negligent Misrepresentation.

26

27        ³ The Court cannot be certain of the exact date American Eagle issued the check because the photocopied

28   image attached to the FAC is slightly blurred.

[Doc. No. 17.]    Freddie Mac has not answered or otherwise responded to the FAC.  On February 7, 2012, and February 9, 2012, respectively, American Eagle and Litton filed motions to dismiss the FAC.  [Doc. Nos. 18-19.]  Both motions seek dismissal on the basis that Plaintiffs fail to satisfy the particularity requirement in Federal Rule of Civil Procedure 9(b).  Litton seeks dismissal on the additional basis that Plaintiffs fail to allege that Litton was under a duty to disclose the existence of the unpermitted additions and DPLU citations, or that Litton owed a duty of care.

## II.  LEGAL STANDARDS

### A.    Motions to Dismiss

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations, brackets, and citations omitted).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  Legal conclusions need not be taken as true merely because they are cast in the form of factual allegations.  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."  *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).  In determining the propriety of a Rule 12(b)(6) dismissal, generally, a court may not look beyond the complaint for additional facts.[4]  *United States v. Ritchie*, 342 F.3d 903, 908

---

[4]  American Eagle requests that the Court take judicial notice of a Grant Deed for the Property recorded on September 11, 2009.  [Doc. No. 18-1.]  Plaintiffs do not object.  Under Federal Rule of Evidence 201(b), judicial notice may be taken of facts that are "not subject to reasonable dispute" because they are "capable of accurate and

1  (9th Cir. 2003); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998).

2  **B.      Federal Rule of Civil Procedure 9(b)**

3          Federal Rule of Civil Procedure 9(b) requires that allegations of "fraud or mistake must

4  state with particularity the circumstances constituting fraud." The "circumstances" required by

5  Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Vess v.*

6  *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Neubronner v. Milken*, 6 F.3d 666,

7  672 (9th Cir. 1993). In addition, the allegation "must set forth what is false or misleading about a

8  statement, and why it is false." *Vess*, 317 F.3d at 1106 (quoting *In re Glenfed, Inc. Secs. Litig.*, 42

9  F.3d 1541, 1548 (9th Cir. 1994)). However, "intent, knowledge, and other conditions of a

10  person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Neubronner*, 6 F.3d at

11  672. This heightened pleading standard ensures that "allegations of fraud are specific enough to

12  give defendants notice of the particular misconduct which is alleged to constitute the fraud charged

13  so that they can defend against the charge and not just deny that they have done anything wrong."

14  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

15          In cases involving multiple defendants, "Rule 9(b) does not allow a complaint to merely

16  lump multiple defendants together but require[s] plaintiffs to differentiate their allegations . . . and

17  inform each defendant separately of the allegations surrounding his alleged participation in the

18  fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 765-66 (9th Cir. 2007); *see also Pegasus Holdings v.*

19  *Veterinary Ctrs. of Am., Inc.*, 38 F. Supp. 2d 1158, 1163 (C.D. Cal. 1998) (where an action

20  involves multiple defendants, a plaintiff "must provide each and every defendant with enough

21  information to enable them to know what misrepresentations are attributable to them and what

22

23  _____

24  ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).
    Applying Rule 201(b), federal courts routinely take judicial notice of facts contained in publically recorded documents,
    including Deeds of Trust, Substitutions of Trustee, and Notices of Defaults, because they are matters of public record

25  and are not reasonably in dispute. *See, e.g.*, *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting
    *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)); *Lingad v. IndyMac Fed. Bank*, 682 F. Supp. 2d

26  1142, 1146 (E.D. Cal. 2010). A court may consider items of which it can take judicial notice without converting the
    motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). Accordingly,

27  the Court GRANTS American Eagle's request and takes notice of the facts contained in the September 11, 2009, Grant
    Deed. However, the Court notes that the Deed does not specify the Property's purchase price and provides no basis for

28  American Eagle's assertion that the purchase price was "discounted." [*See* Doc. No. 18 at 4:12.]

fraudulent conduct they are charged with.") (citations omitted).

Rule 9(b)'s heightened pleading requirement "protects potential defendants—especially professionals whose reputations in their fields of expertise are most sensitive to slander—from the harm that comes from being charged with the commission of fraudulent acts." *Semegen*, 780 F.2d at 731. Providing detailed notice to defendants also prevents plaintiffs from filing complaints "as a pretext for the discovery of unknown wrongs." *Bly-Magee v. Cal.*, 236 F.3d 1014, 1018 (9th Cir. 2001) (quoting *In re Stac Elecs. Secs. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)).

**C.    Plaintiffs' Fraud-Based Claims**

**1.    Intentional Misrepresentation**

To state a claim for fraud, also known as intentional misrepresentation, a plaintiff must plead "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 917 (Cal. 1997)); *see generally* Cal. Civ. Code §§ 1709-10.

**2.    Negligent Misrepresentation**

To state a claim for negligent misrepresentation, Plaintiffs must allege the following: "1) a representation as to a material fact; 2) that the representation is untrue; 3) that the defendant made the representation without a reasonable ground for believing it true; 4) an intent to induce reliance; 5) justifiable reliance by the plaintiff who does not know that the representation is false; and, 6) damage." *Bear Stearns & Co. v. Daisy Sys. Corp.*, 97 F.3d 1171, 1180 (9th Cir. 1996) (citation omitted). The existence of a duty of care is necessary to support a negligent misrepresentation claim. *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1523 (N.D. Cal. 1990) ("Liability for negligent misrepresentation may attach only where plaintiff establishes that defendants breached a duty owed to him"); *Garcia v. Superior Court*, 268 Cal. Rptr. 779, 782-83 (Cal. 1990); *see also*

1   *Settle v. World Sav. Bank, F.S.B.*, 2012 U.S. Dist. LEXIS 4215, *31-32 (C.D. Cal. Jan. 11, 2012).[5]

2   **3.   Fraudulent Inducement to Enter Contract**

3   The tort of fraudulent inducement to enter a contract, also known as promissory fraud, is a

4   "subspecies of the action for fraud and deceit" and lies "where a defendant fraudulently induces a

5   plaintiff to enter into a contract." *Lazar v. Superior Court*, 909 P.2d 981, 985 (Cal. 1996).  "The

6   action is one of deceit, which requires proof that the defendant made a misrepresentation of fact or

7   a promise without any intention of performing it." *Serv. by Medallion, Inc. v. Clorox Co.*, 52 Cal.

8   Rptr. 2d 650, 655 (Cal. Ct. App. 1996).

9   **4.   Fraudulent Concealment**

10   To state a claim for fraudulent concealment, Plaintiffs must allege that "(1) the defendant

11   concealed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff;

12   (3) the defendant concealed or suppressed the fact with an intent to defraud; (4) the plaintiff was

13   unaware of the fact and would have acted if he or she had known about it; and (5) the concealment

14   caused the plaintiff to sustain damage." *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1156

15   n.3 (9th Cir. 2000).

16   "There are four circumstances in which a duty to disclose may arise such that

17   nondisclosure or concealment constitutes actionable fraud:  (1) when a fiduciary relationship exists

18   between the parties; (2) when the defendant has exclusive knowledge of material facts not known

19   to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4)

20   when the defendant makes a partial representation to the plaintiff while suppressing other material

21   facts." *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (Cal. Ct. App. 1997) (citations omitted).

22   _____

23   [5] The Ninth Circuit has not yet determined whether Rule 9(b)'s heightened pleading standard applies to a
claim for negligent misrepresentation, but the general consensus among district courts in California is that it applies.
24   *See Errico v. Pac. Capital Bank, N.A.*, 753 F. Supp. 2d 1034, 1049 (N.D. Cal. 2010) ("[N]egligent misrepresentation
'sounds in fraud' and is subject to Rule 9(b)'s heightened pleading standard . . . ."); *Neilson v. Union Bank of Cal.,*
25   *N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003); *see also In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159,
1176 (S.D. Cal. 2010) (Anello, J.) (applying Rule 9(b) to negligent misrepresentation claim); *Kennedy v. Lehman Bros.*
26   *Bank, FSB*, 2011 U.S. Dist. LEXIS 88784, *11-12 (S.D. Cal. Aug. 10, 2011) (Sammartino, J.) (same); *Young v.*
*Fluorotronics, Inc.*, 2010 U.S. Dist. LEXIS 117362, *22-25 (S.D. Cal. Nov. 3, 2010) (Hayes, J.) (same); *but see*
27   *Petersen v. Allstate Indem. Co.*, 2012 U.S. Dist. LEXIS 32968, *8-9 (C.D. Cal. Mar. 12, 2012) (finding that Rule 9(b)
does not apply to negligent misrepresentation claims; criticizing *Neilson* opinion).

28

1   "The first circumstance requires a fiduciary relationship; each of the other three 'presupposes the

2   existence of some other relationship *between the plaintiff and defendant* in which a duty to

3   disclose can arise.'"  *Deteresa v. Am. Broad. Cos.*, 121 F.3d 460, 467 (9th Cir. 1997) (quoting

4   *LiMandri*, 60 Cal. Rptr. 2d at 543) (emphasis added).  Such relationships "'are created by

5   transactions between parties from which a duty to disclose facts material to the transaction arises

6   under certain circumstances.'  Examples are 'seller and buyer, employer and prospective

7   employee, doctor and patient, or parties entering into any kind of contractual agreement.'"  *Id.*

8   (quoting *LiMandri*, 60 Cal. Rptr. 2d at 543-44).

9         Fraud claims based on concealment are grounded in fraud and are therefore subject to Rule

10  9(b)'s heightened pleading requirement.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir.

11  2009); *Settle*, 2012 U.S. Dist. LEXIS 4215 at *29-30 (collecting cases).

12                                    **III.  DISCUSSION**

13        American Eagle and Litton seek dismissal of Plaintiffs' four fraud-based claims on the

14  basis that Plaintiffs fail to satisfy Rule 9(b)'s particularity requirement.  Specifically, they argue

15  that Plaintiffs fail to plead facts regarding the "who, what, when, where, and how" of Litton's and

16  American Eagle's alleged fraudulent conduct.  Plaintiffs argue they have satisfied rule 9(b).[6]

17  Litton seeks dismissal of Plaintiffs' claims on the additional basis that Plaintiffs have not alleged

18  that Litton owed them a duty of disclosure or care.

19  **A.    Litton's Motion to Dismiss**

20        **1.    Plaintiffs' Fraud Claims Fail to Satisfy Rule 9(b)**

21        Plaintiffs allege Litton acted as Freddie Mac's "agent on the Property" and "servicer on the

22  Property long after Freddie Mac acquired the Property."  [FAC at ¶¶ 15, 34, 44.]  They further

23  allege Litton failed to disclose the existence of the unpermitted additions "as required by law," [*id.*

24

25        [6] Plaintiffs argue in part that their claims are subject to a more relaxed "plausibility" standard rather than
    Rule 9(b)'s heightened standard because all facts that support their fraud claims are under Defendants' control.  [*See*
26  Doc. No. 22 at 4; Doc. No. 23 at 4.]  However, facts regarding the places, participants, dates, and times of Plaintiffs'
    own interactions or communications with Defendants and their employees are equally within Plaintiffs' grasp.  Thus,
27  Rule 9(b)'s particularity requirement is not reduced to a "plausibility" standard here.  Plaintiffs generally cite *Estate of
    Migliaccio v. Midland Nat'l Life Ins. Co.*, 436 F. Supp. 2d 1095 (C.D. Cal. 2006), but this case does not support the
28  assertion that Rule 9(b)'s particularity requirement "is diminished to a more general nature" in the instant case.

¶¶ 35, 45], in order to induce Plaintiffs to purchase the Property from Freddie Mac, [*id.* ¶ 38]. However, averments that Litton generally concealed information and induced reliance, without attendant allegations of dates, times, places, and participants are insufficient to satisfy Rule 9(b)'s particularity requirement.

The Court recognizes that Plaintiffs' claims are based on concealment of facts, not affirmative untruthful statement, and the possibility exists that Plaintiffs *may* not be able to identify untrue statements by Litton. However, Plaintiffs are nonetheless required to comply with Rule 9(b)'s particularity requirement.[7] *See Kearns*, 567 F.3d at 1125-27 (upholding dismissal of nondisclosure-based fraud claim that were "couched in general pleadings"); *see also Franco v. Fannie Mae*, 2011 U.S. Dist. LEXIS 51795, *14-16 (D. Haw. May 13, 2011) (dismissing concealment-based fraudulent misrepresentation claim for failing to plead "who, what, where, when, and how"). Alleging facts regarding the places, dates, or times of their interactions with Litton would at least provide the company notice of the occasions on which Plaintiffs claim Litton had the opportunity to disclose the truth about the Property but instead chose to withhold material information. Moreover, to the extent any Litton employee made a statement that concealed or failed to disclose the existence of the unpermitted additions, Plaintiffs "must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Lazar v. Superior Court*, 909 P.2d 981, 989 (Cal. 1996) (internal quotation marks omitted). As pled, the FAC does not provide Litton notice of the who, what, when, or how of the company's alleged fraudulent conduct.

### 2. Plaintiffs' Fraudulent Concealment and Negligent Misrepresentation Claims Fail to Allege Litton Owed Plaintiffs a Duty of Disclosure or Care

Litton argues that Plaintiffs fail to allege the existence of a duty of disclosure or care based on a relationship with Litton. [Doc. No. 19-1 at 4-5.] While Plaintiffs allege Litton concealed the

---

[7] Plaintiffs do not provide authority for the proposition that Rule 9(b)'s particularity requirement is relaxed in cases involving fraud by concealment, and the Court's independent research has not revealed any such authority.

1   existence of the unpermitted additions and citations, they never expressly allege that Litton had an

2   affirmative duty to disclose this information to them.  Plaintiffs do not allege Litton acted as

3   Freddie Mac's agent during the sale transaction or negotiations with Plaintiffs.  They simply allege

4   that Litton acted as Freddie Mac's "agent," "servicer," and "agent as servicer of the Property."

5   [FAC at ¶¶ 11, 15, 21, 34, 44, 54, 65.]  However, as explained below, even assuming, *arguendo*,

6   that Litton and Freddie Mac had an agency relationship, such a relationship, without more, is

7   insufficient to establish Litton owed Plaintiffs a duty of disclosure or care.

8           Under California tort law, an agent is liable to a third party for the agent's own acts or

9   omissions "when his acts are wrongful in their nature."  Cal. Civ. Code § 2343; *see also* Rest.

10  (Third) Agency § 7.01 ("An agent is subject to liability to a third party harmed by the agent's

11  tortious conduct.").  "Section 2343(3) only makes an agent liable for affirmative misfeasance."

12  *Nasrawi v. Buck Consultants, LLC*, 713 F. Supp. 2d 1080, 1091 (E.D. Cal. 2010) (citing *Ruiz v.*

13  *Herman Weissker, Inc.*, 29 Cal. Rptr. 3d 641 (Cal. Ct. App. 2005)).  Because Plaintiffs allege

14  Litton engaged in affirmative misfeasance–i.e., actively concealing material facts–they must allege

15  Litton owed them a duty of disclosure independent of any such duty Freddie Mac may have owed

16  them.  *See LiMandri*, 60 Cal. Rptr. 2d at 543 ("[W]here material facts are known to one party and

17  not to the other, failure to disclose them is not actionable fraud unless there is *some relationship*

18  *between the parties* which gives rise to a duty to disclose such known facts.") (emphasis added;

19  citation omitted).

20          Plaintiffs appear to assume that Litton owed them a duty solely because Litton acted as

21  Freddie Mac's "agent."  [*See* FAC at ¶ 54.]  Their opposition to Litton's motion to dismiss

22  elucidates this contention, as they argue that, "as the seller of real property, Freddie Mac and its

23  agents, Litton and American Eagle, had a duty to disclose [the] material defect" to Plaintiffs.

24  [Doc. No. 23 at 5.]  Plaintiffs thus contend that Litton owed them a duty solely by operation of its

25  alleged agency relationship with Freddie Mac.  However, as *LiMandri* instructs, the mere fact of

26  an agency relationship is *ipso facto* insufficient to give rise to such a duty.  While Plaintiffs allege

27  they purchased the property from Freddie Mac, they have not alleged they entered into any

28

1   transaction with Litton.  Nor have they alleged that they had any other relationship,

2   communication, or interaction such that Litton would owe them a duty.  Moreover, Plaintiffs never

3   allege that Litton had knowledge of Plaintiffs' existence or participated in the sales transaction in

4   any way.  Without such allegations, Plaintiffs fail to plead the existence of "some relationship"

5   with Litton and therefore fail to allege that Litton owed them a duty of disclosure or care.

6         Although Plaintiffs argue that Litton, "as Freddie Mac's agent, had an independent

7   obligation to disclose material facts to the Bells," [Doc. No. 23 at 5], the cases they cite for support

8   both involved *real estate* agents who actively participated in the real estate transactions at issue,

9   not "agents" in the general sense.  *See Cooper v. Jevne*, 128 Cal. Rptr. 724, 726-27 (Cal. Ct. App.

10  1976) (sales agents knew that the property they sold was built in a substandard manner, violated

11  building codes, and was vulnerable to possible structural failure, but represented to buyers that the

12  property was luxurious and an "outstanding" investment); *Lingsch v. Savage*, 29 Cal. Rptr. 201,

13  205 (Cal. Ct. App. 1963) ("*The real estate agent or broker representing the seller* . . . possesses,

14  along with the seller, the requisite knowledge [of facts that affect the value or desirability of

15  property] . . . , whether he acquires it from, or independently of, his principal, he is under the same

16  duty of disclosure.") (emphasis added).  Although Plaintiffs refer to Litton as Freddie Mac's

17  "agent," "servicer," and "agent as servicer of the Property," [FAC at ¶¶ 11, 15, 21, 34, 44, 54, 65],

18  they never allege Litton acted as Freddie Mac's "real estate agent" or "sales agent," as the courts

19  in *Lingsch* and *Cooper* analyzed those terms.

20  **B.    American Eagle's Motion to Dismiss**

21        Finally, Plaintiffs fail to plead their fraud claims with particularity against American Eagle.

22  In contrast to the allegations against Litton, because Plaintiffs allege that American Eagle acted as

23  Freddie Mac's "real estate agent/broker" and represented Freddie Mac "during the sale of the

24  Property," [FAC at ¶ 57], they ostensibly successfully allege the existence of a duty in accordance

25  with *Cooper* and *Lingsch*.  However, Plaintiffs summarily allege that American Eagle represented

26  Freddie Mac during the sale of the Property and do not provide any details about transactions,

27

28

1    interactions, or conversations with American Eagle or its employees.[8]  A general allegation that

2    American Eagle represented Freddie Mac during the sale of the Property does not satisfy Rule

3    9(b)'s heightened pleading requirement.  As explained above, Plaintiffs must allege the "who,

4    what, when, where, and how" of American Eagle's alleged fraudulent conduct.  [*See supra* Part

5    III.A.1.]

6                              **IV.  CONCLUSION**

7            For the reasons set forth above, the Court **GRANTS** Litton's motion to dismiss, **GRANTS**

8    American Eagle's motion to dismiss, and orders as follows:

9    (1)    All claims against Defendant Litton are **DISMISSED without prejudice**.

10   (2)    All claims against Defendant American Eagle are **DISMISSED without prejudice**.

11   (3)    The Court grants Plaintiffs leave to amend these claims one final time.  A second amended

12           complaint shall be filed no later than May 18, 2012.

13   **IT IS SO ORDERED.**

14   DATED:  May 4, 2012

15

16                                               Hon. Michael M. Anello
                                                 United States District Judge
17

18

19

20

21

22

23

24

---

25          [8]  For example, Plaintiffs do not allege when American Eagle first discovered the existence of the unpermitted
     additions or whether the company had the requisite knowledge during sales negotiations with Plaintiffs.  Furthermore,
26   it is unclear whether Litton ever informed American Eagle of the first citation, which did not impose a fine.  American
     Eagle's knowledge of the second citation is also unclear because that citation issued and was sent to Litton on
27   September 9, 2009, [Doc. No. 17-4], and the Grant Deed to the Property was recorded a mere two days later, on
     September 11, 2009, [Doc. No. 18-1 at 3].  Thus, it is equally unclear whether American Eagle had knowledge of the
28   unpermitted additions before title passed.