**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL J. BELL *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br><br> FEDERAL HOME LOAN MORTGAGE CORPORATION *et al.*, <br><br> Defendants. | CASE NO. 11-CV-2514-MMA(RBB) <br><br> **ORDER:** <br><br> **GRANTING DEFENDANT LITTON LOAN SERVICING LP'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; and** <br><br> [Doc. No. 30] <br><br> **DENYING DEFENDANT AMERICAN EAGLE REAL ESTATE INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** <br><br> [Doc. No. 31] |

Pending before the Court are Defendants Litton Loan Servicing LP's and American Eagle Real Estate, Inc.'s (respectively, "Litton" and "American Eagle," and collectively "Defendants") motions to dismiss Plaintiffs' Second Amended Complaint ("SAC"). The Court previously granted Defendants' motions to dismiss the First Amended Complaint and dismissed Plaintiffs' fraud-based claims for failure to satisfy Federal Rule of Civil Procedure 9(b)'s particularity requirement. The Court also dismissed Plaintiffs' fraudulent concealment and negligent misrepresentation claims against Litton because Plaintiffs did not allege Litton owed them a duty

of disclosure or care. Plaintiffs have since filed the SAC, and the instant pending motions ensued. The Court now **GRANTS** Litton's motion, **DISMISSES** the claims against Litton without leave to amend, and **DENIES** American Eagle's motion.

## I. BACKGROUND

The Court previously set out the facts of this case in its Order granting Litton's and American Eagle's motions to dismiss. [*See* Doc. No. 28.] After the Court dismissed Plaintiffs' claims against Litton and American Eagle, Plaintiffs filed the SAC, re-alleging claims against these Defendants for (1) Fraudulent Inducement (to enter contract); (2) Fraud – Intentional Misrepresentation; (3) Fraudulent Concealment; and (4) Fraud – Negligent Misrepresentation.

## II. LEGAL STANDARDS

### A. Motions to Dismiss

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations, brackets, and citations omitted).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998). In determining the propriety of a Rule 12(b)(6) dismissal, generally, a court may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908

(9th Cir. 2003); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998).

**B.     Federal Rule of Civil Procedure 9(b)**

Federal Rule of Civil Procedure 9(b) requires that allegations of "fraud or mistake must state with particularity the circumstances constituting fraud." The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). In addition, the allegation "must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106 (quoting *In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). However, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Neubronner*, 6 F.3d at 672. This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

In cases involving multiple defendants, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 765-66 (9th Cir. 2007); *see also Pegasus Holdings v. Veterinary Ctrs. of Am., Inc.*, 38 F. Supp. 2d 1158, 1163 (C.D. Cal. 1998) (where an action involves multiple defendants, a plaintiff "must provide each and every defendant with enough information to enable them to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.") (citations omitted).

Rule 9(b)'s heightened pleading requirement "protects potential defendants—especially professionals whose reputations in their fields of expertise are most sensitive to slander—from the harm that comes from being charged with the commission of fraudulent acts." *Semegen*, 780 F.2d at 731. Providing detailed notice to defendants also prevents plaintiffs from filing complaints "as a pretext for the discovery of unknown wrongs." *Bly-Magee v. Cal.*, 236 F.3d 1014, 1018 (9th Cir.

2001) (quoting *In re Stac Elecs. Secs. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)).

**C.    Plaintiffs' Fraud-Based Claims**

**1.    Intentional Misrepresentation**

To state a claim for fraud, also known as intentional misrepresentation, a plaintiff must plead "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 917 (Cal. 1997)); *see generally* Cal. Civ. Code §§ 1709-10.

**2.    Negligent Misrepresentation**

To state a claim for negligent misrepresentation, Plaintiffs must allege the following: "1) a representation as to a material fact; 2) that the representation is untrue; 3) that the defendant made the representation without a reasonable ground for believing it true; 4) an intent to induce reliance; 5) justifiable reliance by the plaintiff who does not know that the representation is false; and, 6) damage." *Bear Stearns & Co. v. Daisy Sys. Corp.*, 97 F.3d 1171, 1180 (9th Cir. 1996) (citation omitted). The existence of a duty of care is necessary to support a negligent misrepresentation claim. *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1523 (N.D. Cal. 1990) ("Liability for negligent misrepresentation may attach only where plaintiff establishes that defendants breached a duty owed to him"); *Garcia v. Superior Court*, 268 Cal. Rptr. 779, 782-83 (Cal. 1990); *see also Settle v. World Sav. Bank, F.S.B.*, 2012 U.S. Dist. LEXIS 4215, *31-32 (C.D. Cal. Jan. 11, 2012).[1]

///

---

[1] The Ninth Circuit has not yet determined whether Rule 9(b)'s heightened pleading standard applies to a claim for negligent misrepresentation, but the general consensus among district courts in California is that it applies. *See Errico v. Pac. Capital Bank, N.A.*, 753 F. Supp. 2d 1034, 1049 (N.D. Cal. 2010) ("[N]egligent misrepresentation 'sounds in fraud' and is subject to Rule 9(b)'s heightened pleading standard . . . ."); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003); *see also In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1176 (S.D. Cal. 2010) (Anello, J.) (applying Rule 9(b) to negligent misrepresentation claim); *Kennedy v. Lehman Bros. Bank, FSB*, 2011 U.S. Dist. LEXIS 88784, *11-12 (S.D. Cal. Aug. 10, 2011) (Sammartino, J.) (same); *Young v. Fluorotronics, Inc.*, 2010 U.S. Dist. LEXIS 117362, *22-25 (S.D. Cal. Nov. 3, 2010) (Hayes, J.) (same); *but see Petersen v. Allstate Indem. Co.*, 2012 U.S. Dist. LEXIS 32968, *8-9 (C.D. Cal. Mar. 12, 2012) (finding that Rule 9(b) does not apply to negligent misrepresentation claims; criticizing *Neilson* opinion).

### 3.    Fraudulent Inducement to Enter Contract

The tort of fraudulent inducement to enter a contract, also known as promissory fraud, is a "subspecies of the action for fraud and deceit" and lies "where a defendant fraudulently induces a plaintiff to enter into a contract." *Lazar v. Superior Court*, 909 P.2d 981, 985 (Cal. 1996). "The action is one of deceit, which requires proof that the defendant made a misrepresentation of fact or a promise without any intention of performing it." *Serv. by Medallion, Inc. v. Clorox Co.*, 52 Cal. Rptr. 2d 650, 655 (Cal. Ct. App. 1996).

### 4.    Fraudulent Concealment

To state a claim for fraudulent concealment, Plaintiffs must allege that "(1) the defendant concealed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant concealed or suppressed the fact with an intent to defraud; (4) the plaintiff was unaware of the fact and would have acted if he or she had known about it; and (5) the concealment caused the plaintiff to sustain damage." *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1156 n.3 (9th Cir. 2000).

"There are four circumstances in which a duty to disclose may arise such that nondisclosure or concealment constitutes actionable fraud:  (1) when a fiduciary relationship exists between the parties; (2) when the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes a partial representation to the plaintiff while suppressing other material facts." *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (Cal. Ct. App. 1997) (citations omitted). "The first circumstance requires a fiduciary relationship; each of the other three 'presupposes the existence of some other relationship *between the plaintiff and defendant* in which a duty to disclose can arise.'" *Deteresa v. Am. Broad. Cos.*, 121 F.3d 460, 467 (9th Cir. 1997) (quoting *LiMandri*, 60 Cal. Rptr. 2d at 543) (emphasis added). Such relationships "'are created by transactions between parties from which a duty to disclose facts material to the transaction arises under certain circumstances.'  Examples are 'seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement.'" *Id.*

1  (quoting *LiMandri*, 60 Cal. Rptr. 2d at 543-44).

2      Fraud claims based on concealment are grounded in fraud and are therefore subject to Rule 9(b)'s heightened pleading requirement. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009); *Settle*, 2012 U.S. Dist. LEXIS 4215 at *29-30 (collecting cases).

### III. DISCUSSION

American Eagle and Litton again seek dismissal of Plaintiffs' four fraud-based claims on the basis that Plaintiffs fail to satisfy Rule 9(b)'s particularity requirement. Specifically, they argue Plaintiffs fail to plead facts regarding the "who, what, when, where, and how" of Litton's and American Eagle's alleged fraudulent conduct. Plaintiffs argue they have satisfied rule 9(b). Litton also seeks dismissal of Plaintiffs' claims on the additional basis that Plaintiffs have not alleged that Litton owed them a duty of disclosure or care.

**A.  Plaintiffs' Claims Continue to Fail to Allege Litton Owed Plaintiffs a Duty of Disclosure or Care**

The Court previously granted Plaintiffs leave to amend the FAC to allege Litton owed them a duty of disclosure or care. In doing so, the Court explained that these duties could not exist without an allegation of "some relationship" between Litton and Plaintiffs. The SAC continues to fail to allege any relationship between Litton and Plaintiffs. As a result, Plaintiffs are unable to allege Litton owed them a duty of disclosure or care.

Under California tort law, an agent is liable to a third party for the agent's own acts or omissions "when his acts are wrongful in their nature." Cal. Civ. Code § 2343; *see also* Rest. (Third) Agency § 7.01 ("An agent is subject to liability to a third party harmed by the agent's tortious conduct."). "Section 2343(3) only makes an agent liable for affirmative misfeasance." *Nasrawi v. Buck Consultants, LLC*, 713 F. Supp. 2d 1080, 1091 (E.D. Cal. 2010) (citing *Ruiz v. Herman Weissker, Inc.*, 29 Cal. Rptr. 3d 641 (Cal. Ct. App. 2005)). Because Plaintiffs allege Litton engaged in affirmative misfeasance–i.e., actively concealing material facts–they must allege Litton owed them a duty of disclosure independent of any such duty Freddie Mac may have owed them. *See LiMandri*, 60 Cal. Rptr. 2d at 543 ("[W]here material facts are known to one party and

not to the other, failure to disclose them is not actionable fraud unless there is *some relationship between the parties* which gives rise to a duty to disclose such known facts.") (emphasis added; citation omitted).

Plaintiffs appear to assume that Litton owed them a duty solely because Litton acted as Freddie Mac's "agent." [*See* FAC at ¶ 54.] However, the Court previously explained that

> [T]he mere fact of an agency relationship [between Litton and Freddie Mac] is *ipso facto* insufficient to give rise to such a duty. While Plaintiffs allege they purchased the property from Freddie Mac, they have not alleged they entered into any transaction with Litton. Nor have they alleged that they had any other relationship, communication, or interaction such that Litton would owe them a duty. Moreover, Plaintiffs never allege that Litton had knowledge of Plaintiffs' existence or participated in the sales transaction in any way. Without such allegations, Plaintiffs fail to plead the existence of "some relationship" with Litton and therefore fail to allege that Litton owed them a duty of disclosure or care.

The Court also explained the differences between the duties of real estate agents and the type of agency relationship Plaintiffs allege Litton is engaged in here. [Doc. No. 28 at 10-11.] Plaintiffs continue to fail to allege facts that Litton owed them a duty of disclosure, as there is no indication in the SAC that any Litton employee ever met or interacted with either plaintiff. Moreover, as Litton has pointed out all along, Plaintiffs fail to allege any facts that suggest that anyone from Litton even knew of either plaintiff's existence. Ultimately, there is no indication in the SAC that there was any relationship whatsoever *of any kind* between Litton and Plaintiffs. As a result, Plaintiffs' claims for fraudulent concealment and negligent misrepresentation against Litton fail.[2]

**B.     American Eagle's Motion to Dismiss**

In its previous Order, the Court found Plaintiffs successfully alleged the existence of a duty of disclosure by American Eagle in accordance with *Cooper* and *Lingsch*. However, the Court found Plaintiffs had not satisfied Rule 9(b)'s heightened pleading requirement. The Court provided the following as examples of deficiencies in the FAC:

> For example, Plaintiffs do not allege when American Eagle first discovered the existence of the unpermitted additions or whether the company had the requisite

---

[2] Plaintiffs' remaining claims against Litton continue to fail to satisfy Rule 9(b)'s particularity requirement. Having reviewed the SAC, the Court sees no new allegations that can support Plaintiffs' claims for fraudulent inducement to enter contract and fraud (intentional misrepresentation).

|   |   |
|---|---|
| 1 | knowledge during sales negotiations with Plaintiffs.  Furthermore, it is unclear whether Litton ever informed American Eagle of the first citation, which did not impose a fine.  American Eagle's knowledge of the second citation is also unclear because that citation issued and was sent to Litton on September 9, 2009, [Doc. No. 17-4], and the Grant Deed to the Property was recorded a mere two days later, on September 11, 2009, [Doc. No. 18-1 at 3].  Thus, it is equally unclear whether American Eagle had knowledge of the unpermitted additions before title passed. |

The Court instructed Plaintiffs to "allege the 'who, what, when, where, and how' of American Eagle's alleged fraudulent conduct."  In response, Plaintiffs allege the following facts:

- On or about June 15, 2009, Earl Gervais . . . , on behalf of AMERICAN EAGLE, signed an Agent Visual Inspection Disclosure (the "Agent's Visual Inspection"), based on an inspection of the Property that occurred on June 5, 2009.  The Agent's Visual Inspection refers to "addition," but fails to describe, or otherwise define, what is meant by "additions." [SAC, Doc. No. 29 at ¶ 14.]

- On or about July 15, 2009, THE BELLS signed a Residential Purchase Agreement and joint Escrow Instructions (the "RP Agreement"). . . . . The Listing Real Estate Broker, Mr. Gervais of AMERICAN EAGLE, also signed the RP Agreement on August 4, 2009. [*Id.*¶ 15.]

- On or about July 30, 2009, six calendar das before Mr. Johnson (on behalf of FREDDIE MAC) and Mr. Gervais (on behalf of AMERICAN EAGLE) sign the RP Agreement, the San Diego County Department of Planning and Land Use . . . properly mailed and addressed a warning to FREDDIE MAC c/o LITTON.  Once received, and as admitted in LITTON's Motion to Dismiss the First Amended Complaint . . . , LITTON "passed [the Warning] on to a separate and distinct" agent of FREDDIE MAC.  [*Id.* ¶ 16.][3]

- On or about August 25, 2009, twenty-six calendar days <u>after</u> the DPLU mailed the Warning to FREDDIE MAC c/o LITTON, Mr. Gervais of AMERICAN EAGLE, signed a Real Estate Transfer Disclosure Statement (the "Disclosure Statement"), which included an Addendum and incorporated the Agent's Visual Inspection.  That same day, August 25, Mr. Gervais again signed the Agent's Visual Inspection.  THE BELLS signed the Disclosure Statement and the Agent's Visual Inspection the following day, August 26, 2009.  The Disclosure Statement's Addendum states "Demolition of Unpermitted Guest House" and "Cap off all utilities servicing unpermitted Guest House."  No reference is made to the Unpermitted Additions to the family home.  [*Id.* ¶ 20 (emphasis in original).]

/ / /

/ / /

/ / /

/ / /

---

[3] In its motion to dismiss the First Amended Complaint, Litton stated: "After receiving *these* citations [referring to the first warning and second citation imposing a $100 fine], Litton simply passed *them* on to a separate and distinct agent of Freddie Mac [*i.e.*, American Eagle]."  [Doc. No. 19-1 at 2:7-8 (emphasis added).]  Plaintiffs incorporate this statement by Litton in support of their allegation that American Eagle had knowledge of both citations before close of escrow.

1  • On or about September 9, 2009, the DPLU properly addressed and mailed a 1st Citation to FREDDIE MAC c/o LITTON. LITTON then "passed [1st Citation] on to a separate and distinct agent" of FREDDIE MAC. [*Id.* ¶ 21 (alteration in original).]

• On or about September 11, 2009, forty-three days <u>after</u> the DPLU mailed the Warning to FREDDIE MAC c/o LITTON and two days <u>after</u> the DPLU mailed the 1st Citation to FREDDIE MAC c/o LITTON, th Grant Deed was recorded with the San Diego County Recorder's Office . . . . [*Id.* ¶ 23 (emphasis in original).]

Taken together, these allegations are sufficient to satisfy Plaintiffs' burden under Rule 9. The Court recognizes that Plaintiffs' claims are based in omission of fact, not affirmative misrepresentations of fact, and that as a result, Plaintiffs may not be able to identify fraudulent statements that possibly were never made. As the California Supreme Court has recognized, the "misrepresentation" element of fraud claims includes "false representation, *concealment*, or *nondisclosure*." *Lazar v. Super. Ct.*, 909 P.2d 981, 984 (Cal. 1996) (emphasis added); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 917 (Cal. 1997)). American Eagle's laser focus on the lack of any affirmative false statements ignores the other species of misrepresentation that Plaintiffs allege here. Ultimately, the Court is satisfied that Plaintiffs' fraud-based claims are now not "couched in general pleadings." *See Kearns*, 567 F.3d at 1125-27. The new allegations above sufficiently plead Plaintiffs' fraud claims to survive a motion to dismiss.[4]

### IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Litton's motion to dismiss and **DENIES** American Eagle's motion to dismiss. Accordingly, given that Plaintiffs had three opportunities to allege viable claims against Defendant Litton, all claims against Litton are **DISMISSED with prejudice and without leave to amend**. Defendant American Eagle shall answer within 14 days of the date of this Order. Finally, Plaintiffs' cursory request for leave to amend the SAC to add a negligence claim against all defendants in this case is **DENIED**. Plaintiffs provide no reason why the Court should allow them to add a negligence claim after

---

[4] The Court notes that much of American Eagle's briefing essentially asks the Court to apply a standard of review more appropriate for summary judgment proceedings.

1 | granting them *two* prior opportunities to amend their complaint and after 12 months of initially
2 | filing this case.

3 | **IT IS SO ORDERED.**

4 | DATED:  September 28, 2012

Hon. Michael M. Anello
United States District Judge